#### IN THE

# SUPREME COURT

#### OF THE

# STATE OF LOUISIANA.

---

EASTERN DISTRICT, MARCH TERM, 1823.

---

### BERNARD vs. VIGNAUD.*

APPEAL from the court of the first district.

MATHEWS J. delivered the opinion of the court. A judgment in this case, rendered in July term, 1820, was suspended by granting a re-hearing, on which the defendant succeeded to have the cause remanded to the court below for a new trial, with instructions to that court, to admit a witness who had been rejected on the first trial, in consequence of supposed incompetency.—10 *Martin*, 482.

The case is now before us by appeal from the judgment rendered on the last trial;

* This opinion was pronounced in February last, but was not printed with the cases of that time, application being made for a re-hearing.

East'n District.
March 1823.

BERNARD
vs.
VIGNAUD.

1ns 1
105 485

Martin
N. S.
1NS 1
122 470

In an action against a third possessor, the creditor is not obliged to produce the evidence on which the judgment in his favour was rendered.

In the case of tacit mortgage *an act of mortgage* is not necessary to enable the creditor to obtain an order of seizure and sale.

A stranger to a judgment may collaterally question its validity.

A judgment rendered against a party without citing him is void.

Martin
N. S.
1NS 1
123 1013

BERNARD
*vs.*
VIGNUAD.

So is a judg-
ment against a
person legally
incapaciated to
defend himself
or expressly pri-
vileged from ju-
dicial pursuit.
The homolo-
gation of a tab-
leau of repar-
tion puts an end
to the legal
functions of
syndics.

and after the district court had heard the testimony of the witness, who was improperly refused on the first. This testimony does not materially change any of the principal features of the case, from their former appearance. In addition to what was strongly urged in previous arguments of the counsel for the defendant, and which is again strenuously pressed on the court, viz. that Fouque was never tutor of the plaintiffs, neither *de jure* or *de facto*, and, consequently, not responsible as such, he now contends; that the judgment against Fouque, introduced in evidence, is void on its face; 1st. because, the syndics were no parties to said judgment; 2d. because, it was rendered without the intervention of a jury: 3d. because, rendered without any trial. 4th. Because, it appears in testimony, that all the negroes, except one, who were mortgaged by Fouque to Vellio, were alive at the time of his bankruptcy; and yet, the syndics who ought to account for the price of the slaves, were not parties to the judgment. A second ground of defence is, " that neither Fouque nor the defendant, can be made liable for the amount borrowed from Vellio, until the note which is proved to have been given, shall be produced,

or proved to have been lost. 3d. That Fouque is not liable for the acts of Vellio, even supposing him to be joint tutor. These are the objections to the correctness of our former judgment.

The present is an action against a third possessor, in which the plaintiffs claim, the right of mortgaged creditors, on property now in his hands; but formerly in the possession of and belonging to Fouque then tutor, during the time of his tutorship.— They rely on the tacit or legal mortgage, accorded to minors, to secure them against maladministration and waste of the estate by tutors, which extends on all the real property and slaves of the latter. By the opinion heretofore rendered in this cause, it was determined that Fouque, the vendor to Vignaud, of the property sought to be seized and sold; did assume and take on himself, their tutorship as set forth by the plaintiffs; and, consequently, subjected his property to all incumbrances, in such cases ordained by law, to secure a faithful fulfilment of his trust, and prevent loss and damage to his wards. In relation to this part of our former judgment, we are now unable to discover any good reason for a change of opinion.

In examining the points filed on the part of the appellant we will invert the order in which they have been placed. In the third and last, the defendant's counsel assumes as true, that co-tutors are not bound *in solidum*. According to the authorities relied on by the plaintiffs counsel, to establish a joint and several responsibility of co-tutors in favour of their wards; it is seen that when more than one tutor is appointed, without distinguishing seperating and dividing their administration, the rights belonging to the tutorship pass to them *in solidum*, and the acts of each one are binding on all who have assumed the office of tutors; and they are all answerable to the minor, whether this estate has been administered by one alone or by the whole number. See *Febrero, part II. b. ch.* 1. *n.* 64 & 78. *Domat, b.* 2. *tit.* 1, *sec.* 2. *n.* 28. *Dig. b.* 26. *tit.* 7, *law* 55. But whether co-tutors be or be not bound *in solidum*, is a question, the solution of which is not necessary, in deciding the present case: for it is not denied, that the amount now claimed by the appellants came into the possession of Fouque; and the appellee resists the payment on the ground, that he (Fouque) never held the money as

East'n District.
*March*, 1823.

BERNARD
*vs.*
VIGNAUD.

tutor; and that consequently, there is no lien or mortgage on the property now pursued.

As to the second objection made to the plaintiffs right to pursue the mortgaged property and subject it to sale, while in the hands of a third possessor : viz. The non-production of the note given by Fouque to Vellio, which ought to have been the basis of the judgment obtained against the former, and should now be produced in evidence ; we are of opinion, that if there be such a judgment, regularly pronounced by a court of competent jurisdiction, the evidence on which it was rendered cannot be required in the present suit. Whether the note alluded to was or was not produced on the trial of the suit against Fouque, does not appear. If it was, it remains on file in that action, and has nothing to do with the present suit. If it was not, we must suppose that its absence was supplied by other legal testimony. The judgment against Fouque is stronger evidence of his being indebted to the plaintiffs than the note could be even were it produced. It is true, that to obtain an order of seizure against mortgaged property in the hands of a third person, the plaintiff must produce a judgment against the original debtor, and also the act of mortgage on which

East'n District.
*March,* 1823.

BERNARD
*vs.*
VIGNAUD.

it is founded : but we are of opinion, that the law on this subject, relates to conventional mortgages, and forms an exception to some principles relating to the authenticity of judgments.

In proceeding to discuss the first ground of defence assumed by the defendant, it is proper to bring into view some of the rules of the *Civil Code*, which specify the effects of mortgages against third possessors; and which relate also to the action of mortgage. According to these rules, to procure an order of seizure of mortgaged property in the hands of a third possessor, three things are required to be done by the creditor; to obtain a judgment against the principal debtor; to produce a copy of the act of mortgage in due form, and to make oath, that the amount of said judgment is due to him, and that the property has been sold to a third person, named in his petition.—*Civil Code* 462, *art.* 43. The second requisite must, of necessity, be dispensed with in cases of tacit mortgages.

Although the demand be made under all these solemnities, the third possessor may, within ten days from his being served with an order of seizure, oppose the sale of the property mortgaged, which is in his possession :

if he has good cause to show in support of such opposition, as that the mortgage has not been registered, or *other plea*: he is also entitled to the benefit of discussion, if there be other property in the hands of the principal debtor mortgaged for the same debt.—*Same authority and page.*

It is evident, from this authority, that the general rule is, that a mortgage creditor, before he can pursue property held by a third possessor, must obtain a judgment against his principal debtor. We must, therefore, examine the document offered in evidence in the present case, as a judgment against Fouque, and test its validity. Should it be considered absolutely null and void, or in other words, that there is no such judgment, it will then be necessary to inquire, whether, there be any exceptions to the general rule, established by law; and whether the situation of the principal debtor, as exhibited by the evidence in this cause, was such as to relieve the plaintiffs from the necessity of obtaining judgment against him.

In opposition to the propriety and legality of inquiring into the validity of the judgment obtained against the principal debtor Fouque, the plaintiff's counsel cites our decision

in the case of *Dufour* vs. *Camfranc*. It is true, that an opinion was therein expressed contrary to a right of inquiring collaterally, into the validity of a judgment rendered by a court of competent jurisdiction, between the parties to the original suit, or persons claiming under them. But the defendant, in the case now under consideration, is an entire stranger to the proceedings against Fouque; and, if he cannot question the validity of that judgment, as a means of defence against the seizure and sale of property acquired from the principal debtor, no means of protection would be left for him against the most iniquitous collusion or fraud which might have been practised between the original creditors and debtor.

The reasons adduced by the defendant's counsel, in support of his first point, viz. the nullity of the judgment against the principal debtor, so far as they are founded on the mere forms of proceeding in that cause, we think, are of little weight: and such are the 2d, 3d and 4th. But the first, which presumes a want of proper parties to that suit, and consequent non-existence of any judgment, is of much more serious import. In

every judgment, the agency and presence of three parties are required; *judex, actor et reus.* To condemn without first hearing a defendant, or giving him an opportunity to be heard, is contrary to all principles of equity and law. Therefore, a judgment rendered against a person, without citing him in the ordinary manner, without his appearing; or any thing deemed by law equivalent to citation or appearance, is utterly void; and imports such absolute nullity, that any one the least interested in opposing its effects, may have such nullity pronounced. A judgment rendered against a person legally incapaciated to defend himself, or expressly privileged from judicial pursuit, ought to be considered as one rendered without parties, and absolutely void.

In cases wherein application is made, to have mortgaged property seized in the hands of a third possessor, the judgment, which the law requires to be produced against the original debtor, may be viewed as evidence in the latter proceeding, and subjected to all legal objections within the power of the defendant, and such are absolute nullity, collusion and fraud.

East'n District.

March, 1823.
BERNARD
vs.
VIGNAUD.

The evidence of the present cause, shows that the principal debtor, Fouque, had made a *cessio bonorum* to his creditors; and that syndics were regularly appointed, who proceeded in the administration of his estate, so far as to file a tableau of distribution which was homologated, before the plantiffs brought suit against him. Upon the surrender of his property, the usual order for stay of proceedings was granted in favour of the insolvent; which certainly protected him from all judicial pursuits, until final adjustment of his estate, and order for distribution and payment to his creditors; except such as proceed on suggestion of fraud.

It is believed, that the homologation of a tableau of repartition, puts an end to the legal functions of syndics, so far as they relate to the administration of an insolvent's estate; and, consequently, they do not properly represent him in judicial proceedings beyond that period. This doctrine was recognised in the case of *Phillips* vs. *Fitzgerald*, 3 *Martin's Rep.* 588.

In the case of *Fouque* vs. *his creditors*, the order for the homologation of the tableau of repartition was made by the court, which

East'n District.
*March*, 1823.

BENARD
*vs.*
VIGNAUD.

held cognizance of the *concurso*, in the year 1812. The suit brought by the present plaintiffs against him and his syndics, was not commenced until the year 1817: evidently long after the functions of the latter had ceased; and as to them, was correctly discontinued.

The protection granted by law to honest and unfortunate debtors, who have made a fair surrender of their property, against personal arrests, on account of debts previously contracted, has in all instances, been held inviolable. But when a release has not been granted, property which the debtor afterwards acquires, may be subjected to the payment of his old debts; which can only be done by judicial pursuit against him, supported by proper allegations and proof. An insolvent is therefore, not absolutely privileged against suits, on account of debts which existed previous to the cession of his estate. If then, there be cases in which he may be sued, on account of debts contracted prior to the surrender of his goods, we can imagine none more just and proper than a suit, the object of which is, merely a liquidation of the debt due by the insolvent, in order to pursue third persons, who may be responsible

BERNARD
*vs.*
VIGNAUD.

for such debts either as third possessors or sureties.

We are therefore of opinion, that Fouque was legally sued and made a party by citation, in the suit of these plaintiffs against him; and that the judgment therein obtained is good and valid. This opinion, renders unnecessary any inquiry into the right which a mortgage creditor has by law, to seize the mortgaged property in the hands of a third possessor, without first obtaining judgment against the principal debtor, when the latter has become insolvent.

*Seghers* for the plaintiffs, *Livingston* for the defendant.